**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOANNA WALKER JACKSON, *et al.*, | CASE NO:   1:07-cv-01868 |
| Plaintiff, | MAGISTRATE JUDGE NANCY A. VECCHIARELLI |
| v. | |
| BRENDON FRIESEN, *et al.*, | **MEMORANDUM OF OPINION** |
| Defendant. | |

This case is before the magistrate judge by consent of the parties. Before the court is the motion of defendants, Brendan Friesen ("Friesen") and Mansour, Gavin, Gerlack, & Manos Co., L.P.A. ("MGGM"), for summary judgment. Doc. No. 70. Plaintiffs, Joanna Walker Jackson ("Jackson"), Edward Jackson ("E. Jackson"), and Christopher Walker Jackson, do not oppose defendants' motion.¹ For the reasons given below, the court GRANTS defendants' motion.

I. Background

Defendants provide evidentiary support for each of the facts recounted below. Except where otherwise noted, these facts are supported by reference to the plaintiffs'

---

¹ Plaintiffs have regularly failed to file timely in this case. Defendants filed their motion for summary judgment on January 20, 2009. To ensure a timely filing, the court gave plaintiffs until March 20, 2009 to file an opposition brief. On March 19, 2009, plaintiffs moved for another 20 days to file their opposition. The court granted plaintiffs an extension until April 2, 2009. Plaintiffs failed to file an opposition on or before that date. On April 8, 2009, six days after the filing deadline had passed, plaintiffs moved for the court to reconsider refusing to grant plaintiffs the entire 20 days requested in their motion to extend the deadline for their opposition brief. The court denied this motion.

own depositions and affidavits or to the deposition of Jackson's sister, Pamela Walker ("Walker").

Jackson is 48 years old, weighs over 500 pounds, and is wheelchair-bound. She lives in Atlanta, Georgia. She is able to use a bathroom with assistance, but only with difficulty. She also uses bedpans, a portable female urinal, and adult absorbent diapers for elimination. When she uses public restrooms, her wheelchair sometimes will not fit through the door to the restroom. On those occasions, she leaves her wheelchair outside the restroom and walks inside with assistance.

Friesen is a member of MGGM, a law firm. MGGM rents offices on the 21st floor of the 55 Building on Public Square in downtown Cleveland. Affidavit of Donald R. Craven[2] [2], Memorandum in Support of Defendants' Motion for Summary Judgment ("Memorandum in support"), Exh. KK-1, ¶ 3. MGGM does not own any portion of the 55 Building. *Id.*

There are no restrooms in the suite of offices that MGGM rents. *Id.* at ¶ 4. Restrooms are located in the public hallways outside MGGM's suite on the 21st and 22nd floors. The women's restrooms have a handicapped stall with rails. MGGM had no responsibility for the design, construction, maintenance, or operation of the women's restroom on the 21st floor of the 55 Building. *Id.* at ¶ 5. On May 18, 2005, the front entrance to the 55 Building, the doorway to MGGM's lobby, the hallway from MGGM's lobby to the firm's Conference Room A, the doorway to Conference Room A, and

---

[2] Craven is the asset manager for Grubb & Ellis. He testifies in his affidavit that he has personal knowledge of the compliance of the 55 Building with the requirements of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*

women's restrooms throughout the building were in compliance with the requirements of the ADA. Affidavit of Donald A. Craven [1], Memorandum in support, Exh. KK, ¶ 4; Affidavit of Craven [2] at **¶¶ 8-**9.

In May 2005, Jackson had to travel from Atlanta to Cleveland, Ohio to be deposed in the course of another case, that is, her suit against the Marriott International Hotel in Cleveland. The depositions were to take place at 9:00 a.m. on May 18, 2005 in the offices of MGGM. Plaintiffs and Walker made the trip in an SUV, with Jackson generally using the portable urinal, and one of the other plaintiffs empty it at rest stops.

Upon their arrival in Cleveland on May 18, 2005, plaintiffs rented an oversized wheelchair for Jackson's use, then checked into a hotel. They arrived at the 55 Building at about 2:00 p.m. Plaintiffs parked their SUV in a surface parking lot near the front door of the 55 Building, and Jackson was pushed in her wheelchair from the SUV to the front door of the building. Plaintiffs did not bring with them the portable urinal in the SUV or any adult absorbent diapers.

When plaintiffs reached the front door of the 55 Building, they discovered that Jackson's oversized wheelchair would not fit through the door. Eventually, Jackson rose from the wheelchair and used her walker to enter the building. The wheelchair was folded, carried through the door, then unfolded inside to re-seat Jackson.

Plaintiffs asked a security guard in the lobby of the 55 Building for directions to the offices of MGGM. Plaintiffs did not at this time, or at any other time, ask for directions to handicapped-accessible restrooms in the building.

Plaintiffs went to Conference Room A in the MGGM suite for their depositions. Friesen conducted the deposition of C. Jackson from 3:22 p.m. to 4:49 p.m. and the

deposition of E. Jackson from 5:12 p.m. to 6:46 p.m.  During the latter part of E. Jackson's deposition, Jackson requested a bathroom break.  Walker obtained a key needed to unlock the public restroom door in the hallway from MGGM's receptionist. Walker visited the women's restroom on the 21st floor in advance of Jackson.  When she returned to Conference Room A, she told Jackson that the restroom could not accommodate her.  Walker later stated, "We could have helped her to the toilet to pee. That would have been fine."  Deposition of Walker, p. 257.  Doc. No. 75.

Jackson did not leave Conference Room A to attempt to use the public women's restroom, nor did anyone go to plaintiffs' SUV to retrieve the portable urinal.  Walker has no recollection of asking MGGM's receptionist if there was another restroom Jackson could use.  No plaintiff contacted the security guard in the building's lobby to ask if there was another restroom Jackson could use.  Instead, Jackson asked Friesen and the court reporter to leave Conference Room A.  The following events surrounding Jackson's use of bathroom facilities and Friesen's alleged offer of a styrofoam cup are at the heart of this lawsuit.  According to defendants:

> [T]he break . . . lasted thirteen minutes.  Friesen went to his office during the break.  Plaintiffs contend that Friesen left the conference room at the time of the requested break, but returned with a 6-ounce Styrofoam coffee cup and a napkin that he gave to JWJ and asked her if she could use them to urinate in.  Friesen denies that he offered JWJ a Styrofoam coffee cup to urinate in.  (Affidavit of Brendon Friesen at ¶10, attached hereto as Exhibit 7).  He maintains that when JWJ requested a restroom break, Pamela asked him to lead her to the kitchen area of the MGGM office so that she could gather some materials of her choosing to facilitate JWJ's restroom break.  (Friesen Aff., at ¶8).  Friesen then went to his office for the duration of the break. (Friesen  Aff., at ¶9).
> Friesen first learned of the alleged Styrofoam cup incident in a motion for protective order that Plaintiffs filed 43 days later on June 30, 2005.  (Friesen Aff., at ¶13). The court reporter states that Friesen was professional and polite throughout the depositions on May 18, 2005, and that he attempted to accommodate every request by the Plaintiffs.  ([Lorraine J.] Klodnick Affidavit,

-4-

> [Memorandum in support,] Exhibits LL and LL-1 at ¶17).).  The Plaintiffs made no mention to the court reporter that any sort of incident had occurred during the restroom break . . .  [T]he court reporter did not hear or see anything that would corroborate that such an incident took place.  (Klodnick Aff., Ex. LL-1 at ¶18).[3]

Memorandum in support, p. 10-11.  Friesen and the court reporter returned to Conference Room A, and the parties concluded E. Jackson's deposition.

On May 20, 2005, the parties met to resolve discovery disputes.  Jackson requested a postponement of her deposition to allow her to obtain counsel.  Jackson returned to Atlanta in the SUV later that day.  Her deposition was eventually conducted in Atlanta.  Friesen testifies that the first time he had any knowledge of his allegedly offering Jackson a styrofoam cup to urinate in was after he filed a motion to compel Jackson to appear for a deposition in Cleveland after she refused to be deposed on May 20, 2005 or on a subsequent date.  Friesen aff. at ¶ 14.

When Jackson was deposed in Cleveland in December 2008, she used absorbent pads for urination during the trip and during the deposition.  Deposition of Jackson, v. II, pp. 493-495.  Doc. No. 72.  Jackson has testified that doors and restrooms that comply with ADA requirements frequently will not accommodate her oversized wheelchair.  *Id.* at 222-23, 270.  Jackson has also testified that she has no evidence to contradict the affidavit testimony of Craven regarding the 55 Building's

---

[3] In particular, the court stenographer testified that to the best of her knowledge, Friesen went to his office during the break and did not enter the conference room during the break; that when she returned to the conference room at the end of the break, Walker was placing an object about the size and shape of a bed pan that was inside a plastic bag into a tote bag; and that "[n]one of the individuals in the conference room said anything to me or in my presence to indicate that they were angry or upset, nor did they say anything about an incident involving urination into a Styrofoam cup."  Depostion of Klodnick, Defendants' motion, Exh. LL-1, ¶¶13-17.

compliance with ADA requirements other than Walker's statement that the public women's restroom could not accommodate her.  *Id.* at 446-48.

On May 18, 2007, plaintiffs filed the instant action in the Court of Common Pleas of Cuyahoga County, Ohio.  Defendants removed the case to this court on June 22, 2007.  Plaintiffs allege a violation of the ADA and of the parallel Ohio civil rights statute, Ohio Rev. Code Ch. 4112 ("Ch. 4112"), stating that defendants operated a place of accommodation, had a duty not to discriminate under the ADA, and deprived Jackson of the equal benefit of public accommodations by virtue of the construction and design of the public restroom and by virtue of their failure to reasonably modify that restroom.  Plaintiffs seek equitable and compensatory relief and attorney's fees for these alleged violations of federal and state law.  Plaintiffs also allege damages for injuries allegedly suffered when she attempted to relieve herself in defendant's conference room.[4]  In addition, plaintiffs assert state actions for intentional and negligent infliction of emotional distress because defendants "failed to take actions resulting in serious emotional distress for the Plaintiff."  Complaint, ¶ 79.  Finally, plaintiffs assert a cause of action for breach of contract,  alleging that plaintiffs and defendants "entered into an agreement whereby Defendant[s] agreed to provide accommodations to the Plaintiffs for Depositions for all parties."  Complaint at ¶ 92.  Defendants breached the contract, according to plaintiffs, when defendants failed to provide adequate accommodations.  Defendants answered that they are not liable to plaintiffs pursuant to any cause of action and deny that a contract existed between themselves and plaintiffs.  Defendants

---

[4] Plaintiffs do not cite a cause of action by which they may recover these damages.

now move for summary judgment as to all causes of action.

## II.  Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56. The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ," *id.*, or by any other evidentiary material admissible at trial.  *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998).  Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  That is, the nonmoving party has an affirmative duty to direct the court's

attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment. *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962). In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.* However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

### III. Claims pursuant to the ADA and Ch. 4112

Title III of the ADA prohibits private individuals from discriminating on the basis of disability in places of public accommodation:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C.A. § 12182(a) ("§ 12182(a)"). Thus, a plaintiff asserting a cause of action for

discrimination in violation or § 12182(a) must demonstrate the following to establish a *prima facie* case of discrimination: "(1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

Title III includes the following rule of construction:

For purposes of subsection (a) of this section, discrimination includes-- . . .

> **(iv)** a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . , where such removal is readily achievable; and
>
> **(v)** where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

42 U.S.C. § 12182(b)(2)(A) ("§ 12182(b)(2)(A)"). If a plaintiff asserts that he or she was discriminated against because defendant failed to remove architectural barriers to plaintiff's full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation, the burden is on plaintiff to demonstrate that (1) such a barrier exists and (2) that removal of the barrier or an alternative method of providing access to the perquisites of the accommodation is readily achievable. *Colorado Cross Disability Coalition v. Hermanson Family Ltd.,* 264 F.3d 999, 1007 (10th Cir. 2001); *Massachusetts v. E*Trade Access, Inc.*, 464 F. Supp. 2d 52 (D. Mass. 2006); *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 435 F. Supp. 2d 1217, 1224 (N.D. Ga. 2005); *Brother v. CPL Investments, Inc.,* 317 F. Supp. 2d 1358, 1370 (S.D. Fla. 2004); *Access Now, Inc. v.*

*South Florida Stadium Corp.,* 161 F. Supp. 2d 1357, 1363-65 (S.D. Fla. 2001) *Parr v. L & L Drive-Inn Restaurant,* 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

Subsection 12182(a) explicitly indicates that lessors and lessees of premises are potentially liable pursuant to Title III. Nevertheless, the legislative history of the ADA indicates that "to bear responsibility for an inaccessible facility under section 303, a party must possess a significant degree of control over the . . . design and construction of a facility." *U.S. v. Days Inns of America, Inc.*, 151 F.3d 822, 826 (8th Cir. 1998). Thus, "a store located in an inaccessible mall or other building, which is operated by another entity, is not liable for the failure of that other entity to comply with this Act by virtue of having a lease or other contract with that entity." P.L. 101-336, Americans with Disabilities Act of 1990; House Report No. 101-485(II), May 15, 1990, p. 104. For this reason, only landlords are potentially liable for violations of § 12182(b)(2)(A)(iv) and (v) in the common, unleased portions of the lessor's structure. *Independent Living Resources v. Oregon Arena Corp.,* 982 F. Supp. 698, 767 (D. Or. 1997), *supplemented by* 1 F. Supp. 2d 1159 (D. Or. 1998).

Ohio Rev. Code § 4112.02(G) prohibits "any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of . . . handicap . . . the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." The Ohio Supreme Court has found that Ohio's laws prohibiting discrimination on the grounds of disability and the ADA are sufficiently identical that Ohio courts may look to caselaw interpreting the ADA in interpreting Ohio's anti-discrimination statute. *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St. 3d 569,

697 N.E.2d 204 (1998).  Thus, liability under the Ohio statute tracks liability under the ADA.

In the instant case, plaintiffs allege that Friesen and MGGM discriminated against Jackson in violation of the ADA and Ch. 4112 by depriving Jackson of the equal benefit of public accommodations by virtue of the construction and design of the public restroom and by virtue of their failure to reasonably modify that restroom.  Defendants respond that (1) the women's restrooms are in common areas of the 55 Building that are not within MGGM's leasehold; (2) defendants had no responsibility for the design, construction, maintenance, or operation of the women's restrooms in the 55 Building; and (3) the women's restrooms in the 55 Building satisfy the requirements of the ADA.  Defendants offer probative evidence in support in support of each of these points.

Plaintiffs fail to establish a *prima facie* case of discrimination pursuant to the ADA.  The parties agree that Jackson is disabled within the meaning of the ADA.  Defendants present evidence, however, that they do not own, lease, or operate the public restrooms in the 55 Building and had no part in its design, construction, or maintenance.  Jackson presents no evidence to the contrary.  Defendants also present evidence that the public restrooms in the 55 Building comply with the requirements of the ADA.  Jackson presents no evidence to the contrary.  Moreover, Walker, the only plaintiff to have seen the public restroom on the 21st floor, has admitted that Jackson could have used that restroom  Consequently, plaintiffs have failed to demonstrate that any architectural barriers prevented Jackson from using the public restroom on the 21st floor, much less that elimination of any such barrier was readily achievable.

Plaintiffs have not shown that defendants own, lease, or operate the public

-11-

restrooms in the 55 Building; had any part in their design, construction, or maintenance; or discriminated against Jackson by failing to remove architectural barriers. Consequently, the court dismisses plaintiffs' causes of action pursuant to the ADA and Ch. 4112.

### IV.  Intentional Infliction of Emotional Distress

Plaintiffs also assert a cause of action for intentional infliction of emotional distress.  According to plaintiffs,

> [d]espite having knowledge . . . of the fragile health, and physical disability of the Plaintiffs' [sic], Defendants intentionally failed to take actions resulting in serious emotional distress for the Plaintiff. . . . In light of its knowledge of Plaintiffs' circumstances, Defendant's intentional actions, omissions, and disregard for persons with special needs were so extreme and outrageous that they far exceeded all possible bounds of decency to be expected or tolerated in a civilized community such as Cleveland, Ohio.

Complaint, ¶¶ 79-80.  Defendants deny having done anything that could reasonably be expected to cause plaintiffs severe emotional distress.

In a case for intentional infliction of emotional distress in Ohio, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgmt., Inc.*, 71 Ohio St. 3d 408, 410, 644 N.E.2d 286, 289 (1994). Defendant intended the distress if the defendant "knew or should have known that actions taken would result in serious emotional distress to the plaintiff . . . ." *Carlton v. Davisson*, 104 Ohio App.3d 636, 653, 662 N.E.2d 1112, 1123 (1995).  Defendant's conduct must be "so extreme and outrageous as to go 'beyond all possible bounds of decency'" and "be considered as 'utterly intolerable in a civilized community . . . ." *Id.*

-12-

The distress experienced by plaintiff must be serious and of a nature that no reasonable person could be expected to endure it.  *Id.*

Plaintiffs do not allege that defendants intended to cause them serious emotional distress.  Moreover, both Friesen and the court stenographer have testified that nothing untoward happened to Jackson during the deposition, and the court stenographer has also testified that nothing in plaintiffs' behavior indicated that anything unusual had occurred during the restroom break when Jackson was deposed.  Friesen further testified that he did not offer Jackson a styrofoam cup in which to urinate.  It has already been shown that Jackson could have used the public restroom available on the 21st floor.  Thus, there is no evidence of any incident having occurred on May 18, 2005 that could be described as extreme and outrageous or beyond all possible bounds of decency.

By failing to allege that defendants intended to cause plaintiffs emotional distress, plaintiffs have failed properly to plead a cause of action for intentional infliction of emotional distress.  They have also failed to offer any evidence in support of such an action.  The court, therefore, dismisses their cause of action for intentional infliction of emotional distress.

### V. Negligent Infliction of Emotional Distress

Plaintiffs also assert a cause of action for negligent infliction of emotional distress.  According to plaintiffs,

> [d]espite having knowledge . . . of the fragile health, and physical disability of the Plaintiffs' [sic], Defendants intentionally failed due to negligence to take actions to cure their violations of the ADA which resulted in serious emotional distress for the Plaintiff. . . . In light of its knowledge of Plaintiffs' circumstances, Defendant's intentional actions, omissions, and disregard for persons with special needs were

-13-

> so extreme and outrageous that they far exceeded all possible bounds of decency to be expected or tolerated in a civilized community such as Cleveland, Ohio.

Complaint, ¶¶ 79-80.  Defendants deny having done or failed to do anything that could reasonably be expected to cause plaintiffs severe emotional distress.

In Ohio, a claim of negligent infliction of emotional distress is limited to instances "where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 86-87, 652 N.E.2d 664, 669.  *Bunger v. Lawson Co.*, 82 Ohio St. 3d 463, 466, 696 N.E.2d 1029, 1033 (1998). To recover, plaintiff must show that (1) the accident created a fear of physical consequences to the person; (2) the fear was of a real danger; (3) the emotional injuries sustained must be serious and reasonably foreseeable.  *See High v. Howard*, 64 Ohio St. 3d 82, 85-86, 592 N.E.2d 818 (1992), *overruled on other grounds by Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St. 3d 244 (1993); *Criswell v. Brentwood Hosp.*, 49 Ohio App. 3d 163, 165, 551 N.E.2d 1315 (1989); *Paugh v. Hanks*, 6 Ohio St. 3d 72, 451 N.E.2d 759 (1983).

Plaintiffs have not properly pleaded a cause of action for negligent infliction of emotional distress, nor have they offered any evidence to support such an action.  The court, therefore, dismisses their cause of action for negligent infliction of emotional distress.

## VI.  Breach of contract

Plaintiffs also assert a cause of action for breach of contract.  According to Plaintiffs,

> Plaintiffs and Defendant entered into a[n] agreement whereby Defendant

-14-

> agreed to provide accommodations to the Plaintiffs for Depositions for all parties. . . . Plaintiffs['] intentions were to utilize "The Firm" for the purposes of Plaintiff's [sic] depositions. . . . Defendant failed to provide adequate accommodations for Plaintiffs, and as a result, Plaintiff's [sic] . . . suffered injuries both physically and emotionally.

Complaint at ¶¶ 92-95.  Defendants deny that there was a contract between them and plaintiffs and also deny that there could have been a breach of such a contract based on a failure to provide adequate accommodations.

The leading case on contract law in Ohio remains *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923, 925-26 (1938).  *Hummel* states that Ohio law recognizes three kinds of contracts:

> express, implied in fact, and implied in law.  In express contracts the assent to its terms is actually expressed in offer and acceptance.  In contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding.  In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit.  Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual.  In truth contracts implied in law are often called quasi contracts or constructive contracts.

*Hummel*, 133 Ohio St. at , 14 N.E.2d at 925-26.  *See also Legros v. Tarr*, 44 Ohio St. 3d 1, 6, 540 N.E.2d 257, 263 (1989).

Ohio law requires three elements before a court may find that a contract has been formed:  (1) Both parties consent to the terms of the contract; (2) there is a meeting of the minds as to the essential terms of the contract; and (3) those terms are sufficiently definite and certain to allow a court to enforce them.  *See Rulli v. Fan Co.*, 79 Ohio St. 3d 374, 376, 683 N.E.2d 337, 339 (1997); *Episcopal Retirement Homes,*

*Inc. v. Ohio Dep't of Indus. Relations*, 61 Ohio St. 3d 366, 369, 575 N.E.2d 134, 137 (1991); *Zelina v. Hillyer*, 165 Ohio App. 3d 255, 258-59, 846 N.E.2d 68, 71 (2005).

The meeting of minds as to the essential terms of the contract must be such that "a reasonable person would find that the parties manifested a present intention to be bound to an agreement." *Zelina*, 165 Ohio App. 3d at 259, 846 N.E.2d at 70 (quoting *Telxon Corp. v. Smart Media of Delaware, Inc.,* 2005 WL 2292800, at *3 (Ohio App. 2005). The meeting of minds must include "a definite offer on one side and an acceptance on the other." *Garrsion v. Daytonian Hotel*, 105 Ohio App. 3d 322, 325, 663 N.E.2d 1316, 1317 (1995) (citations omitted).

The terms of the contract must be sufficiently clear to allow enforcement. According to the Ohio Supreme Court,

> A court cannot enforce a contract unless it can determine what it is.  It is not enough that the parties think that they have made a contract.  They must have expressed their intentions in a manner that is capable of being understood.  It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are.  Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.

*Rulli*, 79 Ohio St. 3d at 376, 683 N.E.2d at 339 (1997) (quoting 1 CORBIN ON CONTRACTS, 525, § 4.1 (Rev. ed. 1993)).  An oral contract may be ascertained from the parties' words, deeds, acts, and silence.  *Zelina*, 165 Ohio App. 3d at 259, 846 N.E.2d at 70-71.  The existence of a contract is a question of law.  *Latina v. Woodpath Dev. Co.*, 57 Ohio St. 3d 212, 567 N.E.2d 262 (1991).  "It is settled law that if the parties' manifestations taken together as making up the contract, when reasonably interpreted in the light of all the circumstances, do not enable the court to determine what the

agreement is and to enforce it without, in effect, 'making a contract for the parties,' no enforceable obligation results." *Id.*

Plaintiffs seem to assert that they and defendants entered into an explicit oral contract whereby defendants would provide accommodations for plaintiffs in return for plaintiffs' attendance at depositions at defendants' offices. Defendants breached that agreement, according to plaintiffs, when the proffered accommodations proved inadequate. Plaintiffs offer no evidence of an exchange of promises establishing both parties' consent to the contract. Plaintiffs also do not explain precisely what the terms of the alleged agreement were. It is unclear whether plaintiffs contend that defendants explicitly promised "adequate" accommodations or whether plaintiffs contend that adequacy was implicit in the promise of accommodations. Further, it is unclear what would constitute "adequate" accommodations within the meaning of the supposed contract. Walker, the only plaintiff to have seen the restroom on the 21st floor, admits that Jackson could have used it. Thus, even if the court were to find that a contract existed between plaintiffs and defendants regarding accommodations during plaintiffs' depositions, the court could not say that defendants breached such an agreement based upon the alleged terms of the alleged contract.

Plaintiffs offer no evidence of an exchange or promises establishing the parties' consent to the contract, and the facts on the record do not show that defendants breached the contract alleged by plaintiffs. For these reasons, the court dismisses plaintiffs' cause of action for breach of contract.

VII.  Conclusion

For the reasons given above, the court grants defendants' motion for summary judgment in its entirety and dismisses plaintiffs' complaint.

IT IS SO ORDERED.


Date:  April 22, 2009                    /s/ *Nancy A. Vecchiarelli*
                                         United States Magistrate Judge